IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VALERIY NASEDKIN, an individual,                    Case No. 3:25-cv-01081-JR

        Plaintiff,                                 FINDINGS AND
                                                    RECOMMENDATION
   v.

OTO.COACH INC., a Canadian corporation;
OTO US FERTILITY LP, a Delaware
limited partnership; and CALEB EVANS, an
individual,

        Defendants.
_____

RUSSO, Magistrate Judge:

     Defendants OTO.Coach Inc. ("OTO"), OTO US Fertility LP ("OTOF"), and Caleb Evans

move to dismiss, or alternatively stay, plaintiff Valeriy Nasedkin's claims pursuant to Fed. R. Civ.

P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6). For the reasons stated below, defendants' motion should

be granted in part and denied in part.

Page 1 – FINDINGS AND RECOMMENDATION

## BACKGROUND

On January 2, 2018, plaintiff "entered into an employment agreement ('Agreement') with Omegawave, Inc." ("Omega") – a Finnish corporation – "to serve as its Vice President of Business Development." Compl. ¶ 9 (doc. 1). "Plaintiff was already employed with [Omega][1] and also served as a member of its Board of Directors [such that the] Agreement was intended to continue his employment as he relocated from Finland to the United States." *Id.* The Agreement specified "a base salary of $11,000 per month, and a performance bonus," as well as "at-will [employment to be] governed by Oregon law." *Id.* at ¶¶ 10-11. In particular, the Agreement contained a "Governing Law" provision, which states:

> All disputes in any way relating to, arising under, connected with or incident to this Agreement shall be litigated, if at all, solely and exclusively in the state and federal courts located in the County of Multnomah, State of Oregon, and, if necessary, their respective corresponding appellate courts. Each party shall forebear from filing a claim in any other county or jurisdiction and expressly submits itself to the personal jurisdiction of the State of Oregon. The performance and construction of this Agreement shall be governed by the substantive laws of the State of Oregon without regard to conflict of law provisions.

Compl. Ex. A, at 6 (doc. 1).

"During the course of [his] employment . . . Plaintiff and [Omega] agreed to defer a year's worth of [his] salary and that, upon his future exit from [Omega], he would be paid the deferred amount in addition to a sum equal to triple the deferred amount." Compl. ¶ 12 (doc. 1).

In 2021, OTO – a Canadian corporation – acquired Omega "through an asset purchase." *Id.* This transaction resulted in the August 2022 Asset Purchase Agreement ("APA"), pursuant to which OTO assumed Omega's liabilities, including Omega's outstanding debts to plaintiff and Huffstutter through his businesses – i.e., OW Technologies, LLC and OW International, LLC

---

[1] In fact, plaintiff and his business partner, Allen Huffstutter, "founded the company that became Omega" in 2012. DuBoff Decl. Ex. 1, at 3 (doc. 17-1); DuBoff Decl. Ex. 3, at 8 (doc. 17-1).

("OW LLCs").[2] *Id.* at ¶ 14; Nasedkin Decl. ¶ 7 (doc. 18); *see generally* Evans Decl. Ex. 1 (doc. 11-1). The APA contains a "Governing Law; Forum Selection" clause, which specifies:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware and the federal laws of the United States applicable therein . . . any action or proceeding arising out of or based upon this Agreement, the other Transaction Documents or the transactions contemplated hereby or thereby may be brought in the courts of the State of Delaware, and each party irrevocably submits and agrees to attorn to the exclusive jurisdiction of such courts in any such action or proceeding. The parties irrevocably and unconditionally waive any objection to the venue of any action or proceeding in such courts and irrevocably waive and agree not to plead in any such court that any such action or proceeding brought in any such court has been brought in an inconvenient forum.

Evans Decl. Ex. 1, at 60 (doc. 11-1).

The same day the APA closed, OTO executed two promissory notes – one with plaintiff and the other with the OW LLCs – and each of which are "to be interpreted in accordance with the laws of Ontario." DuBoff Decl. Ex. 1, at 2, 5 (doc. 17-1).

Plaintiff's "promissory note (the 'Note') . . . provided for the payment of $700,000 in a series of installments." Compl. ¶ 14 (doc. 1); *see generally* Evans Decl. Ex. 2 (doc. 11-2).

Pursuant to Huffstutter's promissory note ("Huffstutter Note"), OTO agreed to pay the OW LLCs nearly $2,000,000. DuBoff Decl. Ex. 1, at 1 (doc. 17-1). OTO immediately "failed to make any of the required payments" under the Huffstutter Note. *Id.* at 2.

In September 2022, plaintiff began his employment with OTO "as Vice President, Research and Development." Compl. ¶ 15 (doc. 1). "To the best of Plaintiff's knowledge and belief, [OTO] assumed the 2018 Agreement."[3] *Id.* Accordingly, OTO – acting through OTOF, an

---

[2] Plaintiff co-founded the OW LLCs with Huffstutter before Omega was formed but has "since sold [his] interest in the[m]" to Huffstutter. Nasedkin Decl. ¶ 6 (doc. 18).

[3] Defendants maintain that "OTO did not assume any such employment agreement. Plaintiff's conclusory allegations to the contrary fail to plead ultimate facts sufficient to give rise to a

OTO subsidiary located in Delaware – "continued to pay Plaintiff the same salary as that provided under the Agreement." *Id.*

OTO "missed the first two installments on the Note" with plaintiff, such that the parties executed a new promissory note ("Second Note") in May 2023. *Id.* at ¶ 17. "The Second Note provided that the first installment of $150,000 was due immediately, and the second installment of $150,000 would be due within 120 days. The remaining $400,000 balance would be paid over two years from available cash flow from licensing deals delivered by Plaintiff." *Id.* OTO paid the first installment of the Second Note but subsequently failed to make any additional payments, resulting in a remaining balance of $550,000. *Id.* at ¶¶ 36-38.

In July 2023, the OW LLCs filed a lawsuit against OTO in the Ontario Superior Court of Justice alleging that OTO breached the Huffstutter Note ("Canadian Suit").[4] *See generally* Kunkel Decl. Ex. 1 (doc. 12-1); DuBoff Decl. Ex. 3, at 13-20 (doc. 17-1). OTO subsequently raised counterclaims for contribution and indemnity against the OW LLCs, Huffstutter, Omega, and plaintiff and his business, VN Consulting Services, premised on the APA and, by extension, the Huffstutter Note and Note/Second Note being void due to Omega and Huffstutter's fraudulent misrepresentations, and plaintiff and Huffstutter's "conspir[acy]" to effectuate "the transaction that became the APA in order to recover" their debts. DuBoff Decl. Ex. 3, at 8, 10 (doc. 17-1).

In November 2023, Omega filed an action against OTO in the Superior Court of the State of Delaware alleging "breach of the payment terms under the APA" ("Delaware Suit"). Kunkel Decl. Ex. 2, at 10 (doc. 12-2); *see generally* DuBoff Decl. Ex. 4 (doc. 17-1). In response, OTO

---

reasonable inference that OTO assumed the contract attached as Exhibit A to the Complaint." Defs.' Mot. Dismiss 9 n.5 (doc. 9).

[4] The Court takes judicial notice of the Canadian and Delaware court filings. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); Fed. R. Evid. 201(b).

asserted a breach of contract counterclaim alleging that "the APA is unenforceable" due to Omega's misrepresentations. Kunkel Decl. Ex. 2, at 7-10 (doc. 12-2). OTO also lodged a third-party declaratory judgment claim at the same time against the OW LLCs and VN Consulting Services. *Id.* at 10-20.

OTO thereafter moved to transfer the Canadian Suit to Delaware on *forum non conveniens* grounds, so that the Canadian and Delaware Suits could "be heard in some coordinated fashion." DuBoff Decl. Ex. 1, at 1 (doc. 17-1). The Ontario Superior Court of Justice denied OTO's motion in December 2024 and OTO appealed that decision in January 2025. *See generally id.*; DuBoff Decl. Ex. 2 (doc. 17-1).

Both the Delaware and Canadian Suits remain ongoing, although VN Consulting Services has sought dismissal from the Delaware Suit on *forum non conveniens* and lack of personal jurisdiction grounds, and OTO has moved to amend its third-party complaint. *See, e.g.*, Evans Decl. ¶ 11 (doc. 11); Kunkel Decl. ¶ 3 (doc. 12); DuBoff Decl. ¶¶ 6-13 (doc. 17); Nasedkin Decl. ¶¶ 8-10 (doc. 18).

In June 2025, plaintiff instituted this action alleging claims for payday violations of Or. Rev. Stat. § 652.120 against all defendants, breach of contract related to the Agreement against OTO and OTOF, and breach of contract related to the Second Note against OTO.[5] Plaintiff "resigned from [OTO] in July 2025." Nasedkin Decl. ¶ 4 (doc. 18).

### STANDARDS

Pursuant to Fed. R. Civ. P. 12(b)(2), dismissal is appropriate when the court lacks personal jurisdiction over the defendant. The plaintiff bears the burden of establishing that personal

---

[5] Plaintiff also alleged "piercing of corporate veil/alter-ego liability" and "tax liability" but indicates an intent to seek amendment "[t]o the extent [they] are not standalone claims." Pl.'s Resp. to Mot. Dismiss 25 (doc. 16).

jurisdiction is proper. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Federal courts ordinarily follow the state law of the forum to determine the bounds of personal jurisdiction. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). Under Oregon's long-arm statute, personal jurisdiction is authorized to the full extent permitted by the United States Constitution. *Id.* (citation omitted). The Due Process Clause of the Fourteenth Amendment, in turn, requires nonresident defendants to "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotations omitted).

The plaintiff need only make a prima facie showing of jurisdictional facts to withstand a motion to dismiss. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Where the motion is based on written materials rather than an evidentiary hearing, the court focuses on the plaintiff's pleadings and affidavits. *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127-28 (9th Cir. 1995). While the plaintiff cannot rest solely on the bare allegations of the complaint, uncontroverted factual allegations must be accepted as true. *Amba Mktg. Sys. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

When a plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When a party brings a motion to dismiss, the court will liberally construe the complaint in favor of the plaintiff and take its allegations as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). However, bare assertions that are a "formulaic recitation of the elements" of a claim "are

conclusory and not entitled to be assumed as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). To state a plausible claim to relief, the plaintiff must allege facts in the complaint that "contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Bacca*, 652 F.3d 1202, 1216 (9th Cir. 2008).

## DISCUSSION

Defendants maintain this lawsuit is "an improper and duplicative attempt to litigate a dispute that is already the subject of comprehensive actions pending in the Ontario Superior Court of Justice (Canada) and Delaware Superior Court." Defs.' Mot. Dismiss 1 (doc. 9). As such, defendants contend dismissal "of this action in its entirety" is warranted: (1) because "this Court lacks personal jurisdiction" and (2) on *forum non conveniens* grounds. *Id.* Alternatively, defendants argue the Court should "stay this proceeding in favor of the first-filed Delaware Suit that encompasses essentially the same parties and core dispute over Plaintiff's promissory note" under *Colo. River Water Conservation Dist v. United States*, 424 U.S. 800 (1976). "Additionally, [Evans] should be dismissed from this lawsuit because . . . there are no supporting factual allegations that could plausibly show [he] was [plaintiff's] employer."[6] *Id.* at 1, 26-27.

## I.    Personal Jurisdiction

Where, as here, general jurisdiction is lacking, a court may exercise specific jurisdiction if the case arises out of the defendant's minimum contacts with the forum state. *Int'l Shoe Co.*, 326 U.S. at 316. The Ninth Circuit has established a three-prong test for analyzing whether specific jurisdiction is proper: (1) a defendant must "purposefully direct his activities" or "perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum

---

[6] Defendants also initially sought dismissal "due to potential fraud on the court," but have since "withdraw[n] their argument." *Compare* Defs.' Mot. Dismiss 1 (doc. 9), *with* Defs.' Reply to Mot. Dismiss 2 n.1 (doc. 23).

[state]"; (2) the plaintiff's claim must be "one which arises out of or relates to the defendant's forum-related activities"; and (3) the exercise of personal jurisdiction over the defendant must "comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger, 374 F.3d at 802.*

The plaintiff "bears the burden of satisfying the first two prongs of the test." *Id.* In the event the plaintiff fails to satisfy either of the first two prongs, personal jurisdiction does not exist in the forum state. *Id.* If the plaintiff is successful in satisfying the first two prongs, the burden shifts to the defendant to show why the exercise of personal jurisdiction would not be reasonable. *Id.*

### A.    Purposeful Availment or Direction

As a preliminary matter, analysis under the "purposeful availment" or "purposeful direction" prong of the specific jurisdiction test depends on the nature of the underlying claims. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017); *but see Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023) (typically the purposeful availment analysis applies in suits sounding in contract and the purposeful direction analysis in tort, although is not "a hard-and-fast rule"). Here, because it is undisputed that plaintiff's claims sound in contract, the purposeful availment analysis applies.

Purposeful availment focuses on whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). To be subject to specific jurisdiction, the defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The contacts must be of the defendant's own volition and not "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). In addition, the contacts must demonstrate

that the defendant deliberately "reached out beyond" its home, for example by "exploiting a market" in the forum state or entering a contractual relationship centered there. *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (internal quotations and alterations omitted). Jurisdiction may exist even without physical contact with the forum state. Indeed, the Supreme Court has upheld the assertion of jurisdiction over a defendant whose efforts were "intentionally directed" towards the forum state when there was no physical contact relating to the claim. *Calder v. Jones*, 465 U.S. 783, 790 (1984).

The record shows that OTO, in part through Evans, directly communicated with plaintiff surrounding both his employment and related debt on numerous occasions. *See, e.g.*, Compl. Exs. A, C (doc.1); Evans Decl. Exs. 1-2 (doc. 11-1); Nasedkin Decl. Exs. 2-4 (doc. 18-1). And the Agreement was entered into precisely to facilitate plaintiff's Oregon residence, where he has been continuously since 2015. Compl. ¶ 9 (doc.1); Nasedkin Decl. ¶ 2 (doc. 18). In addition, OTO has "personally solicited" the employment of and entered into a contractual relationship with at least one other Oregon-based employee working remotely under plaintiff.[7] Larionov Decl. ¶¶ 2-5 (doc. 19).

Under strikingly similar circumstances, the Ninth Circuit recently held that specific jurisdiction existed in regard to a remote employer. *See Cohen v. Infinite Grp., Inc.*, 2025 WL 1554928, *2 (9th Cir. June 2, 2025) (the "defendant's knowing effort to reach out beyond its home state to create" a continuing employment relationship, which "contemplated that [the defendant] would regularly direct the activities [the plaintiff] would undertake in Oregon in service to the

---

[7] This employee has also initiated a lawsuit in this District against OTOF and Evans, alleging wage claims under Oregon law. Defendants in that action, who are represented in part by the same counsel, have not moved to dismiss for lack of personal jurisdiction, nor do they assert any related affirmative defenses. Answer ¶¶ 19-23 (doc. 11, Case No. 6:25-cv-01489-MC).

company and . . . would deposit money in [the plaintiff's Oregon] bank account," indicated purposeful availment) (citations and internal quotations and brackets omitted); *see also Perry v. Nat'l Ass'n of Home Builders of U.S.*, 2020 WL 5759766, *4 (D. Md. Sept. 28, 2020) (in the context of remote work, an employer purposefully avails itself to a forum by "intentionally direct[ing] contact with the forum state, such as through some combination of affirmatively recruiting the employee while a resident of the forum state, contracting to have the employee work from the forum state, having the employee attend meetings with business prospects within the forum state, and supplying the employee with equipment to do work there"). The Court finds this precedent persuasive and adopts *Cohen*'s reasoning as its own. The first prong is satisfied.

### B.    Connection Between Forum-Related Activities and the Claims

Next, the plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 529 U.S. 351, 359 (2021) (citation and internal quotation omitted). In other words, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F.*, 582 U.S. 255, 264 (2017) (citation and internal quotations and brackets omitted).

Here, plaintiff's claims directly arise out of the parties' contract-based employment arrangement. These claims would not exist without defendants' intentional contacts with Oregon. Accordingly, the second prong is met.

### C.    Reasonableness

On the final prong, the burden shifts to the defendant to show that the exercise of jurisdiction would not be reasonable. *Schwarzenegger*, 374 F.3d at 802. The court must consider the following factors to determine the reasonableness of Oregon's exercise of jurisdiction:

(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (quotation and citation omitted). No one factor is dispositive. *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).

Significantly, defendants' briefing is silent as to the reasonableness prong, such that they failed to carry their burden. *See, e.g.*, Defs.' Mot. Dismiss 7-10 (doc. 9). Nevertheless, the Court has independently reviewed the seven factors outlined in *Harris Rutsky* and finds, on balance, the exercise of specific jurisdiction to be reasonable. Defendants' motion is denied in this regard.

## II.    *Forum Non Conveniens*

"To prevail on a motion to dismiss based upon *forum non conveniens,* a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Ranza*, 793 F.3d at 1076 (citation and internal quotations omitted). "A plaintiff's choice of forum is generally entitled to deference, especially where the plaintiff is a United States citizen or resident, because it is presumed a plaintiff will choose her 'home forum.'" *Id.* To overcome this deference, the defendant must make "a clear showing of facts establish[ing that] such oppression and vexation of a defendant . . . [is] out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (citation and internal quotations omitted). Stated differently, "*forum non conveniens* is an exceptional tool to be employed sparingly, not a doctrine that compels plaintiffs to choose the optimal forum for their claim." *Id.* (citation and internal quotations, brackets, and ellipses omitted).

The parties do not dispute that Delaware is an adequate alternative forum as "it can provide a remedy for Plaintiff" and defendants "are amendable to service [there]." Defs.' Mot. Dismiss 11 n.6 (doc. 9); Pl.'s Resp. to Mot. Dismiss 21 (doc. 16). And plaintiff's choice of forum – Oregon – "is presumptively convenient" and entitled to deference. *Carijano v. Occidental Petroleum Corp.*, *643 F.3d 1216, 1227 (9th Cir. 2011)* (citation omitted). As such, defendants' motion hinges on the private and public interest factors.

### A.    Private Interest Factors

The private interest factors include:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* at 1229 (citation and internal quotations omitted).

Plaintiff is a resident of Oregon. OTO is a Canadian corporation, Evans is a Canadian resident, and OTOF is a Delaware partnership. In addition to the parties, the key witnesses all appear to be foreign to Oregon. That is, defendants identify Omega as one key witness, whereas plaintiff states in a perfunctory fashion that he "also has potential witnesses in Oregon," but without identifying any specifics. *Compare* Defs.' Mot. Dismiss 12 (doc. 9), *with* Pl.'s Resp. to Mot. Dismiss 21 (doc. 16).

As plaintiff denotes, however, travel and associated costs are going to be necessary for the parties and witnesses irrespective of whether litigation occurs in Canada, Delaware, or Oregon. *See* Pl.'s Resp. to Mot. Dismiss 21-22 (doc. 16) ("[n]o location is home to more than half of the parties . . . Given the diversity of the parties, no forum will be convenient for everyone"). And, because litigation is currently ongoing in both the Delaware and Canadian Suits, the parties lack the option of bringing all three related cases together in a single jurisdiction. Most, if not all, of

Page 12 – FINDINGS AND RECOMMENDATION

the evidence is likely to be electronically accessible. As such, the first, second, third, and fifth factors are either neutral or do not weigh strongly in favor of dismissing the action.

Neither party has identified an unwilling witnesses. Defendants suggest Omega "is unlikely to testify unless compelled (lest it risk undermining its position in the Delaware Suit)." Defs.' Mot. Dismiss 13 (doc. 9). But defendants do not provide any evidence in support of this argument, which is phrased equivocally. *See Carrillo-Gonzalez v. U.S. Immigr. & Naturalization Serv.*, 353 F.3d 1077, 1079 (9th Cir. 2003) (argument of counsel "does not constitute evidence"); *see also Truly Social Games, LLC v. Leaf Mobile, Inc.*, 2023 WL 8809715, *5 (D. Or. Dec. 11, 2023), *adopted by* 2024 WL 264057 (D. Or. Jan. 23, 2024) (in assessing the fourth factor, "the court does not simply compare the number of potential witnesses subject to compulsory process in each locale . . . the court firsts asks whether it has been alleged or shown that witnesses would be unwilling to testify") (internal citation and quotations omitted); Pl.'s Resp. to Mot. Dismiss 23-24 (doc. 16) ("[t]here are . . . not expected to be any unwilling witnesses beyond this Court's jurisdiction should the Court decide to retain this case"). The fifth factor is thus neutral.

"[T]he fact that any judgement would have to be enforced in [Canada] favors dismissal." *Truly Social Games*, 2023 WL 8809715 at *5 (internal citation and quotations omitted).

As for the final factor, defendants argue that dismissal would promote efficiency as Canada and Delaware are "already familiar with this dispute" and plaintiff's "Note contains a choice of law provision that designates Canada as providing the governing law." Defs.' Mot. Dismiss 13-14 (doc. 9). However, plaintiff's breach of Agreement claim relates to an Oregon "Governing Law" provision and, as denoted above, the Canadian and Delaware Suits are concurrent to one another. Defendants are correct, however, that hearing plaintiff's claims in Oregon may require the parties "'to hire experts on Canadian contract law,' which 'would be unnecessary if the parties litigated

the case in British Columbia" and favors dismissal. *Id.* at 14 (quoting *Truly Social Games*, 2023 WL 8809715 at *6); *see also* Pl.'s Resp. to Mot. Dismiss 26 (doc. 16) ("[t]he claim to enforce the Second Note is governed by Canadian contract law, which admittedly may not be an area of the Court's expertise and would require the parties to obtain experts").

### B.    Public Interest Factors

The public interest factors include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Carijano*, 643 F.3d at 1232.

Plaintiff is an Oregon resident and OTO, while a foreign company, has two (former) Oregon employees currently alleging wage violations under Oregon statutory law, with which the Court is exceedingly familiar. Although at least one of plaintiff's breach of contract claims may require the application of foreign law, which "strongly favors dismissal based on *forum non conveniens*," "this factor alone is not sufficient to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate." *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 665 (9th Cir. 2009); *Piper Aircraft Co v. Reyno*, 454 U.S. 235, 260 n.29 (9th Cir. 1981). The first factor suggests retention of this suit is warranted and the second factor does not strongly favor dismissal.

After comparing the burdens on each forum, the Court concludes that the third factor favors dismissal given the need to apply Canadian law, and the ongoing Delaware and Canadian Suits. *Truly Social Games*, 2023 WL 8809715 at *6-7.

Neither party presented evidence as to the relative congestion of the dockets of the courts, such that the fourth factor is neutral. And, as defendants concede, the final factor "weighs against

dismissal" because "there is . . . a contract dispute between parties from Canada and Oregon." Defs.' Mot. Dismiss 15-16 (doc. 9).

### C.    Weighing the Factors

"The plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in [another forum]." *Dole*, 303 F.3d at 1118. "District courts have flexibility in balancing [the public and private interest] factors [but] the central focus of the *forum non conveniens* inquiry is convenience." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249-50 (1981).

On balance, neither the private nor public factors in this case strongly favor dismissal. And as noted above, plaintiff is a resident of Oregon and is asserting claims under Oregon law and an Agreement that contains an Oregon-specific "Governing Law" provision. His choice of forum is entitled to great (although "not absolute") deference. *Ranza* 793 F.3d at 1076. Even though defendants' connection to the forum is largely happenstance, as addressed in Section I, they certainly understood that plaintiff's work would be performed on behalf of OTO from Oregon. In light of the foregoing, the Court cannot conclude that defendants have clearly demonstrated a level of oppression or vexation that is out of proportion to plaintiff's significant convenience associated with litigating in this forum. Dismissal is therefore not appropriate on *forum non conveniens* grounds.

## III.    *Colorado River* Stay

"[T]he circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Colo. River*, 424 U.S. at 818. In other words, "giving regard to conservation of judicial resources and comprehensive disposition of

litigation can support a stay or dismissal of federal litigation in favor of parallel state proceedings"

under certain limited circumstances. *Mendocino Ry. v. Ainsworth*, 113 F.4th 1181, 1187 (9th Cir.

2024) (citation and internal quotations omitted).

To determine whether a *Colorado River* stay is proper, the court must first determine there

are "concurrent state and federal court proceedings involving the same matter," and then balance

the following eight factors:

> (1) which court first assumed jurisdiction over any property at stake; (2) the
> inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4)
> the order in which the forums obtained jurisdiction; (5) whether federal law or state
> law provides the rules of decision on the merits; (6) whether the state court
> proceedings can adequately protect the rights of the federal litigants; (7) the desire
> to avoid forum shopping; and (8) whether the state court proceedings will resolve
> all issues before the federal court.

*Id.* at 1188 (citation and internal quotations omitted). "These factors are not applied as a

mechanical checklist, but rather in "a pragmatic, flexible manner with a view to the realities of the

case at hand." *Id.* (citation and internal quotations omitted).

Initially, the Court finds that the threshold element is met. *See* Defs.' Mot. Dismiss 19, 24

(doc. 9) (the Delaware Suit concerns "the same parties, similar claims (breach of contract), and the

same core issue" – "whether Omega breached the APA through fraudulent misrepresentations to

OTO, voiding OTO's obligation to make payment under the APA – including Plaintiff's Note,

which was part of the APA . . . if OTO were to file an Answer to Plaintiff's Complaint, it would

be nearly identical to the one OTO filed in Delaware"); *cf. Nakash v. Marciano*, 882 F.2d 1411,

1416 (9th Cir. 1989) ("exact parallelism . . . is not required. It is enough if the two proceedings are

substantially similar").

The first factor is "inapplicable given there is no specific property in dispute." *Mendocino*

*Ry.*, 113 F.4th at 1188. Concerning the second factor, "Oregon is nearly 2,500 miles by flight from

Delaware," which constitutes a significant distance and favors the issuance of a stay. Kunkel Decl.

¶ 10 (doc. 12); *cf. Colo. River*, 424 U.S. at 820 (among other elements, "the 300-mile distance between" the state and federal court counseled towards dismissal).

The third factor also weighs in favor of a stay because "concurrent cases would resolve common questions that could result in waste of judicial resources and cause confusion in the continuing disputes between the parties." *Medocino Ry.*, 113 F.4th at 1189. That is, allowing both this case and the Delaware Suit to proceed simultaneously would result in duplicative judicial efforts to resolve the question of whether the APA is enforceable and, by extension, whether plaintiff's Note and/or Second Note are enforceable. Indeed, although plaintiff characterizes "this action [as] distinct from the Delaware action because they involve different contracts between different parties who owe different obligations," it is significant that the Delaware Suit has the potential to resolve and streamline myriad aspects of this litigation. Pl.'s Resp. to Mot. Dismiss 28 (doc. 16).

Likewise, the fourth factor weighs in favor of a stay. The Delaware Suit "was filed almost two years ago," and more than a year and a half before this lawsuit was commenced. Kunkel Decl. ¶ 3 (doc. 12). In that time, "there have been nearly 60 docket filings, dispositive motions decided, and there are dispositive motions currently pending." *Id.*; *see also* Evans Decl. ¶ 11 (doc. 11) ("I have personal knowledge of the Delaware Suit [which has] entered the discovery phase of litigation"); *Medocino Ry.* 113 F.4th at 1189 ("[w]hen a state action has been progressing for multiple years with extensive discovery, substantive motions, orders deciding multiple issues, or interlocutory appeals, [the fourth] factor factors abstention") (citations omitted).

Regarding the fifth factor, where "a case involves routine state law, such as claims for breach of fiduciary duty and breach of contract, a district court is considered capable of deciding such issues and there are no 'rare circumstances' supporting a stay." *In re Galena Biopharma, Inc.*

*Derivative Litig.*, 83 F.Supp.3d 1033, 1041 (D. Or. Feb. 4, 2015). As such, contrary to defendants' assertion, the mere fact that Delaware law "provides the substantive rules for decision on the merits" does not bolster their position. *Compare id.*, *with* Defs.' Mot. Dismiss 23 (doc. 9). Yet the application of Canadian law, and the potential need for experts, does slightly neutralize this factor. Accordingly, the fifth this factor does not support a stay, but only nominally.

As to the sixth factor, both parties acknowledge that "Delaware is capable of adjudicating plaintiff's claims about the Second Note," which supports staying this case. Defs.' Mot. Dismiss 23 (doc. 9); Pl.'s Resp. to Mot. Dismiss 32 (doc. 16).

As to the seventh factor, "[t]he chronology of events suggests that both parties took a somewhat opportunistic approach to . . . litigation." *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 981 (9th Cir. 2011). In fact, given the timing of this lawsuit, plaintiff must have understood at the time he drafted his complaint that his promissory notes were unenforceable if the Delaware Suit rules that the APA was induced by fraud. The record before the Court nonetheless does not affirmatively evince forum shopping on either party's behalf, such that this factor is neutral. Finally, as noted above, the eighth factor – parallelism – favors a stay.

In sum, all the applicable factors (with the exception of the fifth) weigh in favor of the issuance of a stay. The Court therefore concludes that this case presents one of the narrow set of circumstances that warrant a stay under *Colorado River*. Defendants' motion is granted in this regard.[8]

---

[8] Plaintiff is nonetheless correct that defendants' motion "may be moot if VN [Consulting Services] prevails on its motion to dismiss or stay the Delaware case." Pl.'s Resp. to Mot. Dismiss 28 (doc. 16). The parties shall immediately notify the Court of any relevant Delaware Suit rulings.

IV.    **Failure to State a Claim Against Evans**

The complaint alleges plaintiff "began his employment with [OTO] as Vice President, Research and Development" in 2022 and that, although he "is actually employed by [OTO], his W-2 identifies [OTOF] as his employer." Compl. ¶¶ 15-16 (doc. 1). Plaintiff seemingly bases his sole factual allegation against Evans, the CEO of OTO, on the aforementioned facts – i.e., "Evans is personally liable for all unpaid wages due by virtue of being an employer as defined in ORS 652.310(1)." *Id.* at ¶¶ 8, 27.

Both parties characterize the relevant issue as whether, under Oregon law, Evans was plaintiff's employer. *See, e.g.*, Defs.' Mot. Dismiss 26-26 (doc. 9); Pl.'s Resp. to Mot. Dismiss 35 (doc. 16). Even so, the parties devote no more than four sentences to the issue and do not cite to any case law or perform any analysis. *See generally id.* And Or. Rev. Stat. § 652.310(1) – which defines an "employer" as "any person who in this state, directly or through an agent, engages personal services of one or more employees" – does not appear to entirely resolve the issue currently before the Court (namely, whether plaintiff has alleged facts demonstrating Evans' personal liability). *Cf.* Defs.' Reply to Mot. Dismiss 15-16 (doc. 23) ("[p]laintiff's theory appears to rest on the notion that [Evans], as CEO of OTO, is personally liable by association, but he offers no supporting authority"). Accordingly, the Court finds the issue inadequately briefed and denies, with leave to renew, defendants' motion on that basis.

## RECOMMENDATION

For the reasons stated herein, defendants' Motion to Dismiss (doc. 9) should be granted as to their request for a stay under *Colorado River* and denied in all other respects.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate

Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 10th day of December, 2025.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge